JENNINGS & CHURELLA CONSTRUCTION COMPANY, APPELLANT, *v.* LINDLEY, TAX COMMR., APPELLEE.

[Cite as Jennings & Churella Constr. Co. *v.* Lindley (1984), 10 Ohio St. 3d 67.]

68

(No. 82-1481—Decided April 11, 1984.)

*Catri, Howells, Kellam & Owens Co., L.P.A., Mr. William W. Owens, Smith & Schnacke Co., L.P.A.,* and *Ms. Maryann B. Gall,* for appellant.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Mr. James C. Sauer,* for appellee.

LOCHER, J. The instant case presents two issues for our consideration: (1) whether appellant taxpayer is liable for use taxes assessed upon the purchase price of bathroom-kitchen modules utilized in appellant's construction of an apartment building, and (2) whether appellee Tax Commissioner abused

his discretion in only partially remitting a statutory penalty imposed pursuant to R.C. 5739.13. We find for appellee on both issues.

The first issue requires a determination of the effect of the words: "* * * a construction contract pursuant to which tangible personal property is or is to be incorporated * * *," as found in R.C. 5739.01(B).[1] Appellee argues, and the court of appeals and board so held, that such language requires the terms of a construction contract to place the burden on the seller to assist in the work of incorporating the product into the real property or an improvement thereon before the purchaser is to be exempted from the tax. We agree with this interpretation.

Recently we had occasion to interpret another clause in R.C. 5739.01(B). In *Botkins Grain & Feed Co.* v. *Lindley* (1982), 1 Ohio St. 3d 64, the clause "* * * incorporated into a structure or improvement * * *" was held to require an actual physical annexation of the sale product before the sale qualified as tax-exempt. Since the *Botkins* transaction involved no physical annexation, the seller was held not to be a construction contractor, and therefore not liable for use tax.

Implicit in the *Botkins* ruling is a requirement that the seller *assist* in the physical annexation pursuant to the terms of the sale contract. The first paragraph of the syllabus in *Botkins* reads in pertinent part:

"A seller is not a construction contractor subject to use taxes under R.C. 5741.02(A) * * * where the principal activity of the seller is assisting in the placement of the capsule [the sale item] on real property and the connection of the utility lines." (Bracketed material added.)

Appellant herein nevertheless claims that the seller of the modules, Modenco, is the construction contractor and thus liable for the tax. Appellant focuses on the "* * * is or is to be incorporated * * *" language of R.C. 5739.01(B), and argues that this transaction qualifies for tax exemption since the modules were *eventually* incorporated into the building. This focus is too narrow, however. R.C. 5739.01(B) requires that tangible personal property is or is to be incorporated into a real property structure or improvement *pursuant to a construction contract* before the tax exemption is to be granted to the purchaser. A construction company, constructing an apartment building, which purchases bathroom-kitchen modules and which thereafter performs all of the incorporation work itself is not exempt from use tax, since the incorporation work is not done pursuant to the construction contract. To be termed a construction contractor, and thus to exempt appellant from liability, Modenco must have been required by the terms of the sales contract to assist in placing the modules within the framework of the building. Since

---

[1] R.C. 5739.01(B) provides, in pertinent part, that:

"* * * [A] construction contract pursuant to which tangible personal property is or is to be incorporated into a structure or improvement on and becoming a part of real property is not a sale of such tangible personal property. The construction contractor is the consumer of such tangible personal property * * *."

Modenco was not required to do so, it is not a construction contractor for the modules, and thus the tax burden falls on appellant.[2]

The second issue concerns the commissioner's exercise of his discretionary power to remit a statutory penalty. Specifically, appellant argues that the commissioner abused his discretion in not remitting the total penalty.

R.C. 5739.13 reads in pertinent part as follows:

"A penalty of fifteen percent shall be added to the amount of every assessment made under this section. The commissioner may adopt and promulgate rules and regulations providing for the remission of penalties added to assessments made under this section." This provision applies to use tax assessments as well, by virtue of R.C. 5741.14.

R.C. 5739.13 mandates the imposition of a penalty in the event of an assessment. Remission of the penalty is discretionary.[3] In *Servomation Corp.* v. *Kosydar* (1976), 46 Ohio St. 2d 67 [75 O.O.2d 147], we held this discretionary power valid and constitutional as an exercise of the state's police power.

Appellate review of this discretionary power is limited to a determination of whether an *abuse* has occurred. *Interstate Motor Freight System* v. *Bowers* (1960), 170 Ohio St. 483 [11 O.O.2d 240]. An abuse of discretion connotes a decision that is unreasonable, arbitrary or unconscionable. *State* v. *Adams* (1980), 62 Ohio St. 2d 151, 157 [16 O.O.3d 169]; *Chester Township* v. *Geauga Cty. Budget Comm.* (1976), 48 Ohio St. 2d 372, 373 [2 O.O.3d 484].

Appellant cites its previously unblemished tax record and the fact that many assessments originally made in this case were reversed to bolster its argument that an abuse of discretion has occurred. We are not persuaded, however, that the imposition of a five percent penalty constitutes an unreasonable, arbitrary or unconscionable action. The imposition of a penalty is mandatory; extraneous matters such as past tax records are only considerations in the remission decision.

Finally, it was expressed in the dissent to the appellate court opinion

---

[2] Ohio Adm. Code 5703-9-14, adopted under the authority granted to the Tax Commissioner in R.C. 5703.05(M), provides further support for our interpretation. This section reads as follows:

"A construction contract is any agreement, written or oral, whether on a time and material basis or lump sum basis, pursuant to which tangible personal property is or is to be incorporated into a structure or improvement to real property so as to become a part thereof without regard to whether it is new construction, maintenance or repair. A construction contractor is any person who performs such an agreement, whether as a prime or a subcontractor."

[3] Further, the Tax Commissioner has promulgated a rule permitting a total or partial remission of the penalty in his discretion. Ohio Adm. Code 5703-9-05 provides:

"In the event a tax assessment to which a fifteen percent penalty has been added under the provisions of the Ohio Sales Tax [and] Use Tax * * * is paid in its entirety, including penalty, within thirty days after the date on which the notice of assessment is served on the person assessed, the Tax Commissioner may remit such part of the penalty as he may deem proper."

below that once the commissioner decides to remit a previously imposed penalty he must remit the penalty *in toto*. This statement misinterprets the scope of the commissioner's discretionary power under the statute. R.C. 5739.13 places no constraints on the *degree* of the remission permitted. Rather, the Tax Commissioner has full discretion to partially remit any statutory penalty assessed under R.C. 5739.13.

For the reasons stated above, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

W. BROWN, SWEENEY and HOLMES, JJ., concur.

CELEBREZZE, C.J., C. BROWN and J.P. CELEBREZZE, JJ., dissent.

CELEBREZZE, C.J., dissenting. The commissioner's discretion in remitting a penalty under R.C. 5739.13 should be restricted to the question of whether the penalty, in its entirety, will be refunded to the taxpayer. The majority would allow the commissioner discretion to impose a penalty, digital or fractional, between zero and fifteen percent. The majority's position is supported neither by the statutes nor the relevant cases.

R.C. 5739.13 states in pertinent part:

"A penalty of fifteen per cent *shall* be added to the amount of *every* assessment made under this section. The commissioner may adopt and promulgate rules and regulations providing for the remission of penalties added to assessments made under this section." (Emphasis added.)

Supposedly on the authority of R.C. 5739.13, the commissioner has announced the following rule:

"In the event a tax assessment to which a fifteen percent penalty has been added under the provisions of the Ohio Sales Tax * * * is paid in its entirety, including penalty, within thirty days after the date on which the notice of assessment is served on the person assessed, the Tax Commissioner may remit such part of the penalty as he may deem proper." Ohio Adm. Code 5703-9-05.

Thus, Ohio Adm. Code 5703-9-05 allows the commissioner, in effect, to reduce the amount of the penalty set forth in R.C. 5739.13. This court has recognized on several occasions that the penalty is mandatory. In *Plowden & Roberts, Inc.* v. *Porterfield* (1970), 21 Ohio St. 2d 276, 281 [50 O.O.2d 497], this court stated:

"It is apparent that Section 5739.13, Revised Code, in conjunction with Section 5741.14, Revised Code, indicates that the imposition of a 15 percent penalty, added to the amount of every use tax assessment made, is mandatory." Accord *Servomation Corp.* v. *Kosydar* (1976), 46 Ohio St. 2d 67, 71 [75 O.O.2d 147].

Moreover, this court's previous cases indicate that the commissioner only has discretion to remit or refund to the taxpayer the entire penalty and not

merely a part thereof. For instance, in *Plowden, supra,* we reiterated at 281-282:

" 'The statutory power to adopt rules and regulations for the remission of penalties creates a discretionary power in the Tax Commissioner. Thus, the remission of *the penalty* * * * differs from the ordinary assessment of taxes in that the remission of *the penalty,* unlike the assessment of a tax, is in the first instance left to the discretion of the Tax Commissioner.' " (Emphasis added.)

In *Servomation Corp.* v. *Kosydar, supra,* we stated at 71:

"Although R.C. 5739.13 makes the imposition of a penalty mandatory, it gives the commissioner sole discretion to determine whether a penalty shall be remitted. * * * [C]onferring of such discretion upon the commissioner by R.C. 5739.13 is valid and constitutional."

I have no disagreement with allowing the commissioner to have the discretion to remit to the taxpayer, in the proper case, the full amount of the penalty added to the assessment. However, to vest the commissioner with the discretion to further determine what portion of the penalty will be refunded runs afoul of R.C. 5739.13 and the interpretative case law.

In my view, the rulemaking authority referred to in R.C. 5739.13 would authorize the commissioner to, for example, promulgate a rule allowing the taxpayer to spread payment of the penalty over time. That rulemaking authority does not authorize the commissioner to defeat the mandatory penalty provision of R.C. 5739.13 by administrative fiat.

Accordingly, I would reverse the decision of the court of appeals and remand for a determination of whether the entire amount of the penalty should be remitted to appellant.

C. BROWN and J.P. CELEBREZZE, JJ., concur in the foregoing dissenting opinion.